Index No.  CV 07 4016 (RPP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARELL BREWSTER,

Plaintiff,

- against -

THE CITY OF NEW YORK , *et al.*

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Deborah Dorfman*
*Tel:  (212) 788-0408*
*NYCLIS No. 2007-026951*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS …………………………………………………………….. 2

ARUGMENT…………………………………………………………………………...2

POINT I: STANDARDS FOR DISMISSAL UNDER FED.
R. 12(b)(6) AND 12(b)(1)…………………………………………………………………2

POINT II: …PLAINTIFF IS BARRED FROM RECEIVING COMPENSATORY DAMAGES
BY THE PRISON REFORM LITIGATION
ACT…………………………………………………………………………………….......3

POINT III: PLAINTIFF  FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE
GRANTED REGARDING HIS JAIL CONDITIONS AND FREEDOM OF RELIGION
CLAIMS…………………...……………………………………………………………..5

     A.     Alleged Unconstitutional Conditions of Confinement…………………………...5

          1.     Eighth Amendment Requirements…………………………………5

               a.     The Deprivation Must Be "Sufficiently Serious"…………6

               b.     Plaintiff Must Also Allege  Facts Sufficient To Show
                    That Defendants Acted With A Culpable State of Mind…6

          2.     Fourteenth Amendment Requirements……………………............7

          3.     Overcrowding…………………………………………………..8

          4.     Inadequate Bed Space…………………………………………9

          5.     Personal Items………………………………………………12

          6.     Time Plaintiff Spent In His Cell, Lock-In Time, Eating In Cells
               …………………………………………………………….13

          7.     Exercise, Recreation, Law Libarary & Scheduling of Activities
               …………………………………………………………..15

               a.     Exercise & Recreation…………………………..15

               b.     Law Library…………………………………...17

Short

**Page**

8.    Discontinuation of Personal Laundry Services...............................................................17

B.    First Amendment Claim.................................................................18

C.    Plaintiff Has Failed to Allege A Viable *Monell* Claim.............................20

POINT IV: CLAIMS AGAINST DEFENDANTS HORN, LANGSTON,SHAW, RIORDAN, SQUILLANTE, AND DAVIS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED THEIR PERSONAL INVOLVEMENT IN THE INCIDENTS ALLEGED IN THE COMPLAINT ........................................................................................21

POINT VI: PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING ...............................................................................................23

CONCLUSION..............................................................................23

**APPENDICES:**

Appendix I: Complaint

Appendix II: The City of New York Board of Correction Minimum Standards for New York City Correctional Facilities, §§ 1-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

DARRELL BREWSTER,

                                                  **07 CV 4019 (RPP)**
                                    Plaintiff,

                    -against-

NEW YORK CITY, et al.

`

                                    Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

Plaintiff filed his Amended Complaint in November, 2007, alleging inadequate conditions of confinement while incarcerated at the Eric M. Taylor Center ("EMTC"), the Anna M. Kross Correctional Center (AMKC), and George V. Vierno Center (GVRC) on Riker's Island. These allegations included: overcrowding that led to inadequate personal supplies; lack of adequate bed space, and inadequate laundry services, among other complaints.  Defendants now respectfully move this Court to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) on the grounds that: 1) plaintiff is barred from obtaining compensatory damages by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(e) because he has failed to allege any actual physical injury; 2) plaintiff failed to state a claim upon which relief can be granted as he did notallege facts sufficient to state constitutional violations as to his conditions of confinement; 3) plaintiff failed to allege any facts demonstrating that the named

defendants had  personal involvement in the incidents and occurrences alleged in the Complaint; and 4) this Court lacks subject matter jurisdiction over claims for which plaintiff lacks standing.

## STATEMENT OF FACTS

**A.     Facilities Conditions Claims**

Plaintiff alleges that as a result of overcrowded conditions at AMKC, GVRC and EMTC there was:.

- inadequate bed space;

- lack of personal supplies;

- he had to spend an excessive amount of time in his cell spent & some inmates had to eat in  their cells;

- having to chose between going to the law library, the yard, commissary and sick call, because all activities are at the same time and he can only attend one activity.

- inadequate personal laundry service;

*See* Amended Complaint, attached hereto as Appendix I.  Plantiff also alleges that his First Amendment rights were violated because of DOC's policy prohibiting inmates from attending religious services unless there are registered for that particular religion. *See id.*

When housed at the EMTC between January 30 through mid-March 2007, plaintiff was  sentenced.  *See id.*, ¶ 5. When housed at the GVRC from approximately September 21, 2006 through January 29, 2007 and  AMKC from approximately September 7-20, 2007, plaintiff was a detainee. *Id.* Plaintiff seeks an award of compensatory damages and attorneys fees and costs. *See id.* "Prayer for Relief" at p. 15.

## ARGUMENT

## POINT I

### STANDARDS FOR DISMISSAL UNDER FED.
### R. CIV. P. 12(B)(6) AND 12(B)(1)

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true. *Grandon v. Merrill Lynch*, 147 F.3d 184, 188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The standards for determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) are "substantively identical" except that for the purposes of a 12(b)(1) motion, it is the party "invoking the jurisdiction off the court" that has the burden of proof. *Lerner v. Fleet Bank, N.A.*, 318 F. 3d 113, 128 (2nd Cir.), *cert. denied* 540 U.S. 1012, 124 S. Ct. 532, 157 L. Ed. 2d 424 (2003). Additionally, unlike a 12(b)(6) motion[1], the court can consider additional papers and affidavits submitted by the moving party in support of the motion. *De Yu Zhang v. U.S. Citizenship and Immigration Service*, 2005 U.S. Dist. LEXIS 26805, *13 (S.D.N.Y. 2005). For the reasons set forth below, all claims in the Complaint should be dismissed.

## POINT II

### PLAINTIFF IS BARRED FROM RECEIVING COMPENSATORY DAMAGES BY THE PRISON REFORM LITIGATION ACT

The Amended Complaint should be dismissed pursuant to the Prison Reform Litigation Act ("PLRA"), 42 U.S.C. § 1997e(e) because plaintiff has failed to allege any physical injuries. *See* Amended Complaint. Section 1997e(e) of the PLRA, in relevant part, states that "No Federal civil action may be brought by a prisoner confined in jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior

---

[1] Except that in a 12(b)(6) motion a court may consider documents for which it can take judicial notice. *Chambers v. Time Warner*, 282 F. 3d 147, 153 (2d Cir. 2002).

showing of physical injury." 42 U.S.C. § 1997e(e). Courts in this District and in the Second Circuit had repeatedly held that where a prisoner, as defined under the PLRA, has failed to allege any physical injury, his or her claims for compensatory damages must be dismissed. *See Jenkins v. Haubert*, 179 F. 3d 19, 28-29 (2d Cir. 1999); *Voorhees v. Goord*, 2006 U.S. Dist. LEXIS 48370 (S.D.N.Y. Feb. 24, 2006)(compensatory damages claims dismissed where inmate alleging custodial assault and threats by a correction officer failed to allege actual physical injury); *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 553 (E.D.N.Y. 2004)(defendants' motion to dismiss where prisoner plaintiff failed to allege any physical harm.). This restriction on the recovery of compensatory damages under the PLRA is equally applicable to former prisoners. *Lipton v. County of Orange, New York, et al.*, 315 F. Supp. 2d 434 (S.D.N.Y. 2004) *citing Cox v. Malone*, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002)("The fortuity of release on parole does not affect the kind of damages that must be alleged in order to survive the gate-keeping function of section 1997e(e). Because plaintiff's suit alleges only emotional injuries, it is barred by the PLRA irrespective of his status as a parolee at the time of filling.").

In the instant matter, plaintiff has not alleged any physical harm resulting from the conditions about which he complains. *See generally*, Amended Complaint. Rather, the only harm that plaintiff alleges in relation to his conditions of confinement claims is that defendants actions or inactions have caused him "genuine deprivation and hardship over an extended period of time" (Amended Complaint at ¶ 31) and have caused him to be placed "at risk" of "increased violence, illness, mental suffering, and deteriorating health." *Id.*, ¶¶ 43 and 49. For his First Amendment claims, plaintiff alleges that he was denied the opportunity to practice his religion because he was denied the opportunity to attend Muslim service. *Id.*, ¶¶ 33, 56-59, 62-65. Such allegations are insufficient to meet the requirements of an actual physical injury as required by

the PLRA. Thus, plaintiff's claims for compensatory damages are barred by the PLRA and must be dismissed.

**POINT III**

**PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED REGARDING HIS JAIL CONDITIONS & FREEDOM OF RELIGION CLAIMS**

In spite of notice pleading requirements under Fed. R. Civ. P. 8, "a civil rights complaint 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under §1983." *Williams,* 2005 U.S. Dist. LEXIS 26143, at *8-9 *quoting Vishevnik v. Supreme Court,* 1999 U.S. Dist. LEXIS 15516 (S.D.N.Y. Oct. 6, 1999). Here, as discussed below, plaintiff's claims are conclusory and fail to establish a claim under § 1983.

**A.  Alleged Unconstitutional Conditions of Confinement**

**1.        Eighth Amendment Requirements**

The applicable analysis of a convicted inmate's constitutional claims regarding conditions of confinement is under the Eighth Amendment. *Helling v. McKinney,* 509 U.S. 25, 31 (1993). "The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Hathaway v. Coughlin,* 37 F.3d 63 , 66 (2d Cir. 1994), *cert denied,* 513 U.S. 1154 (1995). The Supreme Court has determined this to include punishments that "involve the unnecessary and wanton infliction of pain." *Id. citing Gregg v. Georgia,* 428 U.S. 153, 173 (1976).  While the Constitution prohibits inhumane conditions for prisoners, it 'does not mandate comfortable prisons.' *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) *quoting Rhodes v. Chapman,* 452 U.S. 337, 349 (1981).

**a.    The Deprivation Must Be "Sufficiently Serious" or a "Substantial Risk f Serious Harm" to the Prisoner Exists**

In order for a prisoner to establish constitutional violations relating to his conditions of confinement, the plaintiff must meet a two-prong test.  First, the plaintiff must show that the deprivation is "sufficiently serious" or there exists a "substantial risk of serious harm" to the prisoner. *Farmer*, 511 U.S. at 834. Just because a prisoner is uncomfortable in his living environment while incarcerated is insufficient to establish a constitutional violation. *Wilson v. Seiter, et al.*, 501 U.S. 294, 298 (1991) *quoting Rhodes*, 452 U.S. at 347, 349.  Rather, a plaintiff must show that the deprivation is sufficiently serious as to result in a denial of "the minimal civilized measure of life's necessities," *Id.*, at 347.

**b.    Plaintiff Must Also Show That Defendants Acted With a Culpable State of Mind**

The second prong of the deliberate indifference test requires plaintiff to show that defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 *citing Wilson*, 501 U.S. at 297. What constitutes a "culpable state of mind" under this prong of the constitutional analysis is dependent upon what harm is alleged. *Jones v. Goord*, 435 F. Supp. 2d 331, 235 (S.D.N.Y. 2006).  "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety, the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Chance v. Armstrong*, 143 F. 3d 98, 701 (2 d Cir. 1998) *quoting Farmer,* 511 U.S. at 837.  Matters involving conditions of confinement, the "deliberate indifference" standard is applicable. *Id. citing Wilson*, 501 U.S. at 303; *see also Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996)(inmate must show that prison officials acted with "a sufficiently culpable state of mind.").

In order to properly allege that a defendant in §1983 action violated an inmates constitutional rights, the plaintiff must allege that the defendant was specifically aware of the inmate's particular conditions of confinement and that such specific conditions posed "an excessive risk" to the inmate's health and safety and that the defendant disregarded that excessive risk. *Flynn v. Wright, et al.*, 2007 U.S. Dist. LEXIS 69422, at *6 (March 23, 2007) *citing Williams v. Fisher*, 2003 U.S. Dist. LEXIS 16442, 2003 WL 22170610, at *9 (S.D.N.Y. Sept. 18, 2003) (failure to allege knowledge of a specific condition placing the plaintiff at excessive risk to his or her health and safety insufficient to state a claim for deliberate indifference). Reliance on an official's alleged knowledge of general prison conditions does not satisfy the deliberate indifference pleading requirement as a plaintiff must allege facts that the defendant was aware of a specific risk or condition that would constitute an excessive risk to the inmate's health and safety and disregard that risk. *Melo v. Combes*, 1998 U.S. Dist. LEXIS 1793, at *14, 1998 WL 67667 (S.D.N.Y Feb 18, 1998).

Plaintiff's claims that arose while he was convicted prisoner must be analyzed under the Eighth Amendment. *Helling,* 509 U.S. at 31.

## 2.  Fourteenth Amendment Requirements

Unlike prisoners, detainees' constitutional rights are analyzed under the due process clause of the Fourteenth Amendment to the United States Constitution. *Benjamin, et al. v. Fraser, et al.*, 343 F. 3d 35, 49 (2nd Cir. 2003). Detainees must not be subjected to punishment "prior to an adjudication of guilt or innocence in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, "[b]ecause restraint is always necessary in effectuating confinement, not every uncomfortable or disabling condition and restriction can be considered punitive." *Benjamin* F. 3d at 50. Although detainees' rights are analyzed under the

Fourteenth Amendment, courts utilize "modified" Eighth Amendment standards to apply to claims brought by detainees challenging jail conditions. *Iqbal v. Hasty, et al.*, 490 F. 3d 143, 169 (2d Cir. 2007); *see also Cuoco v. Moritsugu*, 222 F. 3d 99, 106 (2d Cir. 2000). To show violations of the Fourteenth Amendment regarding jail conditions, detainees must meet a two prong test. First, they must show that the deprivation is "sufficiently serious" or there exists a "substantial risk of serious harm". *See Farmer*, 511 U.S. at 834, *see also Cuoco*, 222 F. 3d at 106. They must also show that defendants acted with deliberate indifference by demonstrating an absence of reasonable care. *Benjamin*, 35 F. 3d at 50.

Here, as discussed below, plaintiff has failed to state constitutional claims under either the Fourteenth or Eighth Amendment regarding his conditions of confinement.

### 3. Overcrowding

The overall theme of the Complaint is that as a result of overcrowding, plaintiff was subjected to substandard living conditions and denied various services and opportunities to which he asserts he is entitled both as a pretrial detainee and as sentenced inmate. *See generally,* Amended Complaint.

Overcrowding and inadequate conditions of confinement resulting from overcrowding, as alleged by plaintiff are "properly the subject of an Eighth Amendment claim only if the plaintiff can show that overcrowding caused the infliction of cruel and unusal punishment against him personally. *Coronado v. Goord, et al.*, 200 U.S. Dist. LEXIS 13876, * 18 (Sept. 26, 2000) *citing Rhodes*, 452 U.S. at 348. "It is a rare case when a plaintiff can make out a claim that his injuries were caused by overcrowding." *Id.* at *19-20 (citations omitted). Just because a jail is overcrowded and inmate suffers and injury or is placed at risk of injury, does not mean that the risk is a result of overcrowding. *Rhodes*, 452 U.S. at 348, 18 U.S.C. § 3632(a)(1)("A Federal court shall not hold prison or jail crowding unconstitutional under the

eighth amendment except to the extent that an individual plaintiff process that crowding caused the infliction of cruel and unusual punishment of at inmate.").

The test for whether overcrowding violates the Fourteenth Amendment is similar to the Eighth Amendment. The Second Circuit has established a "stringent test for determining when overcrowding will amount to punishment" and therefore rise to the level of a constitutional violation. *Lareau v. Manson*, 651 F. 2d 96, 103 (2nd Cir. 1981). In *Lareau*, the court held that to demonstrate such a violation, "it must be shown that the overcrowding subjects a detainee over an extended period of time to genuine privations and hardships not reasonably related to a legitimate governmental objective." *Id*. There must also be a causal connection alleged between the harm suffered by the detainee and overcrowding. *See Lewis v. Williams, et al.*, 1996 U.S. Dist. LEXIS 18173, *9 (S.D.N.Y. Dec. 9, 1996).

Here, as set forth more fully below in Sections 4 through 8, plaintiff makes numerous conclusory allegations that the overcrowding led to unconstitutional conditions of confinement by pointing to a laundry list of unpleasant conditions to which plaintiff was allegedly subjected. These conditions, however unpleasant and undesirable, even when viewed in the "totality of the circumstances", do not violate the Constitution. Furthermore, plaintiff has failed to allege acts sufficient to show that the individually names defendants acted with deliberate indifference to his health and safety.

### 4.      Inadequate Bed Space

Plaintiff alleges that as a result of overcrowding at the AMKC and the EMTC, he was denied sufficient bed space in violation of § 1-05 of the New York City Board of Corrections Minimum Standards ("Minimum Standards"). Amended Complaint, ¶¶ 18, 26.

There is no constitutional right to a particular amount of bed space. *See Benjamin, et al . Fraser. et al. (Benjamin II)*, 343 F. 3d 35, 53 (2d Cir. 2003). In *Benjamin II*, the Second Circuit explicitly rejected the District Court's finding that at inmates at Riker's Island must be afforded at least 6 feet of sleeping space at each inmate's head to meet constitutional requirements. *Id.*. The Court, in relevant part, held that "there is no constitutional requirement that pretrial detainees[2] have six feet of breathing room". The Court also stated that in order to establish  a constitutional violation resulting from inmates sleeping too closely to one and other, the inmates would have to demonstrate an actual or imminent risk of substantial harm". *Id. citing Lewis v. Casey*, 518 U.S. 343, 350 (1996).

Here, plaintiff alleges that the bed space that he was afforded at the AMKC and at the EMTC violated § 1-05 of the Minimum Standards . Amended Complaint, ¶¶ 18, 26. First, plaintiff's claims do not constitute sufficiently serious deprivations as plaintiff, in his Amended Complaint demonstrates that he was only subjected to these alleged conditions for only a week while at the AMKC and approximately a month and half at the EMTC. *See id.*, ¶ 5.   Such temporary conditions are not "sufficiently serious" to rise to the level of a constitutional violation. *See Wilson*,  501 U.S. at 294.

Additionally, plaintiff has not alleged that as a result of these conditions he suffered an actual substantial  harm.   Further, plaintiff is no longer incarcerated at the EMTC and thus, cannot show that he is "at imminent risk" of any injury as a result of these conditions. Thus, he cannot meet the first prong of the deliberate indifference standard required in *Benjamin* to establish a constitutional violation for inadequate bed space. *See Benjamin*, 343 F. 3d at 53.

---

[2] Since pretrial detainees are to be given at least the same rights as convicted prisoners, convicted prisoners do not have any additional rights in this regard, and in fact may have less than pretrial detainees.

Moreover, plaintiff's allegations that defendants acted with deliberate indifference in regards to the amount of sleeping space that he was afforded are merely conclusory and lack the specificity of pleading required, even in light of notice pleading rules under Fed. Civ. P. 8, to establish a claim for the second prong of an Eighth Amendment claim. *See* Discussion at Point III.A.1.b at p. 7. Specifically, plaintiffs alleges no specific facts establishing that the individually named defendants were involved in or aware of the alleged conditions, that they were aware of an excessive risk to his health and safety and that they disregarded this risk. Rather, plaintiff, in relevant part, makes only conclusory allegations against the individually named defendants. *See* Amended Complaint, ¶¶ 43, 44, and 46, respectively. None of these or any of the other allegations in the Amended Complaint identify facts suffcient to establish that any of the individual defendants were aware of plaintiff's specific conditions of care, that such conditions posed an "excessive risk" of harm to his health and safety, and that they disregarded this risk.

Finally, as discussed above, under Point II, plaintiff has also failed to allege that he suffered a physical injury as a result of inadequate bed space and lack of privacy. *See id.* Consequently, he has failed to state a constitutional claim for which relief can be granted for his claims about inadequate bed space and denial of privacy while sleeping and bathing and thus, this claim must be dismissed.

### Section 1-05 of the City of New York Board of Correction Minimum Standards for New York City Correctional Facilities

Plaintiff also alleges the inadequate bed space violated the § 1-05 of the City of New York Board of Correction Minimum Standards for New York City Correctional Facilities ("Minimum Standards"). Amended Complaint at ¶¶ 18, 26. Even construing plaintiff's allegations as true, however, these conditions violated § 1-05 of the Minimum Standards, these

standards are not enforceable in federal court. *See Handberry v. Thompson*, 446 F. 3d 335, 344-46 (2d Cir. 2006)(The PLRA limits federal court relief to federal claims).    Furthermore, a violation of these Standards is no *per se* a constitutional violation, as a plaintiffs must  show that the violation of these standards meets the two prong deliberate indifference test described above to constitute a constitutional violation. Thus, these claims must be dismissed.

### 5.    Personal Items

Temporary deprivations of toiletries do not violate the Eighth or Fourteenth Amendments. *See Trammell v. Keane*, 338 F. 3d 155, 165 (2d Cir. 2003)(deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable—does not pose such an obvious risk to an inmate's health or safety that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and[that they also drew] the inference.'"(*quoting Farmer*, 511 U.S. at 837).

Here, plaintiff has failed to state a constitutional violation for inadequate personal supplies because the deprivations that he alleges were only temporary and thus, were not sufficiently serious.   Although plaintiff alleges that he did not receive toilet paper, soap, or toothpaste when he was first admitted to the AMKC, as plaintiff alleges, he only had to go without these supplies for "the better part of a week." Amended Complaint, ¶ 17.  Clearly, this deprivation was only temporary and thus, was not a constitutional violation. *See Trammell*, 338 F. 3d at 165.

Similarly, plaintiff's allegation that he often had to go without these supplies while at the GVRC and the EMTC because Riker's Island often ran out of these supplies are also insufficient to state a constitutional violation because these deprivations, as plaintiff concedes, were also temporary. *See* Amended Complaint, ¶ 17 (alleging that "Mr. Brewster suffered similar deprivations for *briefer* durations...")(emphasis supplied).

Plaintiff has also failed to allege sufficient facts to demonstrate that defendants acted with a culpable state of mind in regards to this claim. *See* Discussion at Point III.A.1.b at p. 7. In fact, plaintiff alleges that after he complained to correctional officers about the lack of adequate personal hygiene items, they "informally addressed his complaints by scavenging for whatever supplies they could obtain from other housing units or facilities." Amended Complaint, ¶ 24.

Plaintiff's claims, should therefore be dismissed.

### 6. Time Plaintiff Spent In His Cell, Lock-In Time (GVRC), Eating In Cells

Plaintiff complains that the period of time each day that inmates were required to be "locked in" to their cells so that the correctional officers could carry out various job duties such as searches and shift changes, were "longer than they should" and the amount of time that plaintiff spent confined to his cell was regularly extended because the one officer assigned to his housing unit assisted with searches of other areas of the facility. Amended Complaint , ¶ 21.

Pretrial detainees have due process interests in being free from restraints on their liberty such as being locked in cells excessively. *See Benjamin I*, 264 F. 3d at 188. To determine whether an inmate has suffered a constitutional deprivation resulting from such restraints, the appropriate analysis depends upon the purpose of the restriction imposed. *Taylor v. Santana*, 2007 U.S. Dist. LEXIS 18438, *14 (S.D.N.Y. March 6, 2007). If the restraint is administrative and not punitive, the inquiry is whether it is being imposed for a legitimate purpose. *Benjamin I* , 264 F. 3d at 188. Such purposes include "maintaining security and order, and any measure having the tendency to promote efficient management of the detention facilty." *Zolnwolsky v. County of Erie*, 944 F. Supp. 1096, 1111 (W.D.N.Y. 1996) *citing Lareau*, 651 F. 2d at 104.

Here, plaintiff alleges that the "lock-ins" were for security and administrative purposes such inmate housing searches and shift changes. Amended Complaint, ¶ 21. These reasons have been recognized by the courts as activities that serve a legitimate purpose related to jail security and operational needs. Plaintiff has also not alleged facts demonstrating that defendant or any individual acted with deliberate indifference with regard to the excess lock-in time or that he suffered any injury resulting from being locked-in to his cell for administrative purposes. These allegations do not, therefore, rise to the level of constitutional violations upon which relief can be granted and should be dismissed.

Plaintiff also alleges that while at the GVRC as a pretrial detainee, he was housed in his cell for approximately 11-12 hours per day because the common area outside of the cells did not accommodate all of the 50 inmates in housing unit. Amended Complaint, ¶ 20. He also alleges that "some inmates were forced to eat with their meal trays in their laps since there were not enough tables for all of the inmates." *Id.* Plaintiff, however, has not alleged any facts that his confinement to his cell for 11-12 hours per day was in any way punitive. *See id.* He also specifically alleges that inmates were allowed to leave their cells in the common area. *Id.* Plaintiff has also failed to allege an actual injury suffered as a result of having to stay in his cell 11-12 hours per day while at the GVRC for approximately four months. Plaintiff has therefore, failed to allege facts sufficient to demonstrate that his confinement in his cell was a "sufficiently serious" deprivation to satisfy the objective prong of the deliberate indifference test.

In regards to his claim about inmates eating with trays in their laps, plaintiff has made no allegations that he ever had to eat with a tray in his lap and has allege no actual injury resulting from this condition of confinement. *See id.* Even if, however, plaintiff had to eat with a

tray on his lap for the four months he was at the GVRC, such a condition is not sufficiently serious.

Finally, plaintiff has not alleged facts sufficient to show that defendants acted with a culpable state of mind in regards to these allegations and therefore has not satisfied the second prong of the deliberate indifference test. *See* discussion at Point III.A.1.b at p. 7.

### 7.    Exercise, Recreation, and Law Library & Scheduling of Activities

Plaintiff has alleged that while housed at the GVRC and the EMTC, he was denied adequate exercise, recreation, and opportunities to go to the law library because he had to chose between exercise, recreation, and going to the law library because these activities were offered at the same time as commissary, meals, and sick calls. *See* Amended Complaint, ¶ 27. For the reasons discussed below, these claims do not amount to constitutional violations and should be dismissed.

#### a.    Exercise & Recreation

Inmates have a right to some opportunity for exercise *Anderson v. Coughlin*, III, 757 F. 2d 33, 35 (2nd Cir. 1985), but do not have a constitutional right to recreation. *Beckford v. Protuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) *citing French v. Owens*, 777 F. 2d 1250, 1255 (7th Cir. 1985) ("it is not the right to recreation, but, rather, the right to exercise that the Eight Amendment protects."). In examining whether an inmate's constitutional rights have been violated, a review of the inmate's "availability of exercise is a key ingredient of a court's analysis." *Williams v. Greifinger*, 97 F. 3d 699, 704 (2d Cir. 1996). Temporary deprivations of exercise are not unconstitutional. *See Anderson*, 757 F. 2d at 36..

Here, plaintiff's allegations do not satisfy either prong of the deliberate indifference test to state a constitutional claim under the Fourteenth or Eighth Amendments.

First, since there is no constitutional right to recreation, plaintiff's claim in regards to opportunities for recreation must be dismissed. *See id.*

Plaintiff's claim that he was unable to have opportunities for exercise because such opportunities conflicted with other activities is also not sufficient to state a constitutional claim. Plaintiff has not alleged facts sufficient to state a claim that this deprivation was sufficiently serious and that as a result, plaintiff was deprived "the minimal civilized measure of life's necessities or that suffered harm or a risk of harm to his health and safety. Additionally, any curtailment on his ability to exercise was temporary as he was only at the GVRC for approximately four months (*see* Amended Complaint, ¶ 5) and as plaintiff has acknowledged in his Amended Complaint, while at the GVRC he was allowed to exercise. *See id.*, ¶ 22 . Such a temporary deprivation is not sufficiently serious to rise to the level of a constitutional violation.

Plaintiff also has not alleged facts sufficient to demonstrate that defendants acted with a culpable state of mind in regards to this alleged denial. *See* Discussion at Point III.A.1.b at p. 7. He has not alleged any facts indicating that defendants were aware of plaintiff's access to exercise, that consequently there was a excessive risk of harm to plaintiff's health and safety, and that they disregarded that specific serious harm or risk of harm.

Finally, nothing in the Minimum Standards prohibits more than one activity from being scheduled at the same time. Even if the Minimum Standards, however, did have such a prohibition, such a violation would not necessarily violate the constitution as a violation of these standards does not alone rise to the level of a constitutional claim. To show a constitutional violation, a plaintiff must meet the two prong deliberate indifference test described above in this Section, which for the reasons discussed herein, plaintiff has failed to do. Moreover, compliance

with the Minimum Standards is not enforceable in federal court. *See* Discussion at Point III. A.4 at pp. 11-12, above. This claim should be dismissed.

### b.    Law Library

Inmates have a constitutional right to reasonable and meaningful access to the courts. S*ee Bounds v. Smith*, 430 U.S. 817, 821, 824-25 (1977). To properly allege an access to courts claim, a plaintiff must show: 1) deliberate indifference by jail personnel to this right; and 2) an actionable claim causing injury. *Stanislaus v. Tolson*, 2002 U.S. Dist. LEXIS 10733, * 4-5 (E.D.N.Y. March 19, 2002). An inmate must also allege that he was prevented from pursuing a legal action resulting from inadequate access to the courts. *Lewis,* 518 U.S. at 354-55. "[A] delay in being able to work on one's own legal action or communicate with the court does not rise to the level of a constitutional violation." *Herrera v. Scully*, 815 F. Supp. 713, 725 (S.D.N.Y. 1993).

Here, plaintiff has not adequately alleged a constitutional claim for denial of access to the law library as he has not alleged that he suffered an actual injury as a result of allegedly being denied access to the law library, including facts that he was denied the ability to pursue a claim as a result of this deprivation as required by *Lewis*. Plaintiff also concedes that he was able to go to the law library, although it was for a shorter period than allowed by DOC policy. Amended Complaint, ¶ 22 . Plaintiff has also failed to allege sufficient facts that to meet the pleading requirements of both the objective "sufficiently serious" prong and the subjective culpability prong of the deliberate indifferent standard. *See* Discussion at Point III.A.1.b at p. 7. Consequently, his law library claims must be dismissed.

### 8.    Discontinuation of Personal Laundry Services

There is no constitutional violation where "inmates are provided the opportunity and the supplies to wash their clothes." *Lunney v. Brureton*, 2007 U.S. Dist. LEXIS 38660* (S.D.N.Y. May 25, 2007).

In the instant matter, plaintiff also alleges that inmates did in fact receive detergent once every three weeks, although he contends it was insufficient and only lasted a few days. Amended Complaint, ¶ 28. Thus, plaintiff had some opportunity to wash his clothes, even if it was not ideal. Additionally, although plaintiff alleges that he had to wear the same dirty uniform for approximately a month and half, such conditions were only temporary. *See id.* These allegations are not amount to a constitutional violation. First, as discussed above at Point III. A.4 at pp. 11-12, above, a violation of the Minimum Standards does not necessarily constitute a constitutional violation and is not enforceable in federal court. More is needed to show a constitutional violation as the plaintiff must meet the two-prong test of the deliberate indifference standard described above to make a claim for a constitutional violation under the 14th and 8th Amendments. For the foregoing reasons, plaintiff has not met these requirements here.

First, plaintiff has not alleged an actual injury resulting from a "sufficiently serious" deprivation that cause harm or placed him at risk of harm to his health and safety. Plaintiff has also not alleged sufficient facts that the defendants acted with a culpable state of mind or without reasonable care in regard to this claim. *See* Discussion at Point III.A.1.b. at p. 7. Plaintiff's claim must therefore, be dismissed.

## B. First Amendment Claim

Plaintiff alleges that his First Amendment rights to freely practice his Muslim religion were violated by defendants because of their imposition of a policy that prohibits an

inmate from attending the religious services of a religion for which an inmate is not registered. Amended Complaint, ¶33. Plaintiff also alleges that this policy violates the Establishment Clause of the First Amendment.

Inmates have the right to have reasonable access to religious services. *Young v. Coughlin,* 866 F. 2d 567, 570 (2nd Cir. 1989). Such rights, however, are not absolute and must be balanced with the legitimate security needs of the institution. *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987).[7] When determining whether a restriction on an inmate's religious practices is reasonable, the court must consider:

> 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that the accommodation will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

*Turner v Safely*, 482 U.S. 78, 89-90 (1987).

To satisfy Establishment Clause requirements "a governmental practice must: (1) reflect a clearly secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and 3) avoid excessive government entanglement with religion." *Lee v. Weisman*, 505 U.S. 577, 584-85 (1992)(referring to the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

The religious registration policy that plaintiff in the instant matter has been held to be constitutional. *Spavone v. City of New York, et al.*, 420 F. Supp. 2d 236, 240 (S.D.N.Y. 2005) *citing Muhammed v. City of New York, et al.* 904 F. Supp. 161, 174 (n. 13), 196-97 (S.D.N.Y. 1995), *appeal dismissed* 126 F. 3d 119 (2d Cir. 1997). In *Muhammed*, Muslim

---

[7] The analysis under *O'Lone* and *Turner* remains valid when analyzing an inmate's freedom of religion claims brought under the First Amendment to the United States Constitution. *Muhammed*, 904 F. Supp. at 196-97. Plaintiff does not bring any claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.

inmates alleged that DOC denied them the ability to practice their religion. The court held that DOC's religion policy had not impermissibly burdened the inmates' ability to practice their religion and stated that even if plaintiffs could have made such a showing, defendants had a compelling state interest in imposing restrictions on the attendance of inmates at religious services. *Id* at 193-194. In particular, the court found that given the security concerns, administrative burdens of the jail, and the as large numbers of inmates to be managed at Riker's Island, the restrictions were compelling. *Id*. at 194.

The Court also noted that the numerous other accommodations for inmate religious practices, such as allowing for inmates to receive individual visits with spiritual advisors, religious literature, among other things, as set forth in the DOC policy and discussed in its decision, adequately meet the individualized religious needs of inmates at DOC.

In this case, if Mr. Brewster wanted to attend Muslim services, all that he needed to do was change his religious affiliation. See Minimum Standards, §1-08(a) ("A prisoner may change his or her religious affiliation), attached hereto As Appendix II.[3]  Furthermore, he was free to have confidential consultation with a religious advisor of their choice during "lock-out" periods (*Id*. §1-08(d)(3)) and was otherwise free to exercise his religious beliefs in any manner that did not constitute a clear and present danger to safety or security of the in institution. *Id*., §1-08(b)(1). Given these policy requirements and *Muhammed* court's findings that this policy does not violate the First Amendment, plaintiff cannot sustain his First Amendment claims on the facts that he has alleged in the Amended Complaint and these claims should be dismissed.

### C.    Plaintiff Has Failed to Allege A Viable *Monell* Claim

---

[3] Defendants respectfully request that the Court take judicial notice of Section 1-08 of the Minimum Standards. Chambers, 282 F. 3d at 153.

In order to state a claim under 42 U.S.C. § 1983 against a municipality, a plaintiff must allege that an unconstitutional act occurred pursuant to an official policy or custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978). Local governments can only be sued directly under § 1983 for monetary, declaratory, or injunctive relief "where the action that is alleged to have violated federal law 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Comm. Health Care Ass'n v. DeParle*, 69 F. Supp. 2d 463, 474 (S.D.N.Y. 1999) *quoting Monell*, 436 U.S. at 690. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" and that the municipality can be faulted for the deprivation. *Caminero v. Rand*, 882 F. Supp. 1319, 1323 (S.D.N.Y. 1995) *quoting City of Canton v. Harris*, 489 U.S. 378, 385 (1989). If a plaintiff cannot prove any set of facts to show an underlying constitutional violation, he cannot prove a claim of liability against a municipality under 42 U.S.C. § 1983. *See Zahra v. Town of Southerland*, 48 F. 3d 674, 685 (2nd Cir. 1995)(to succeed on a §1983 claim against a municipality, plaintiff must prove denial of a constitutional right).

Here, as discussed above, because plaintiff has not pled sufficient facts demonstrating a constitutional violation and thus has failed to allege facts to sufficient to show municipal liability. *See Monell*, 436 U.S. at 694. The claims against New York City should be dismissed.

## POINT IV

**CLAIMS AGAINST DEFENDANTS HORN, LANGSTON, SHAW, RIORDAN, SQUILLANTE, AND DAVIS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED THEIR PERSONAL INVOLVEMENT IN THE INCIDENTS ALLEGED IN THE COMPLAINT**

It is well settled that in order to bring a §1983 claim against an individual for civil rights violations for damages, a plaintiff must specifically allege personal involvement by the individual against whom such claims are being brought. *See Colon v. Coughlin*, 58 F. 3d 865, 873 (2nd Cir. 1995). The failure to specifically plead such allegations is fatal to the complaint. *See Finger*, 2004 U.S. Dist. LEXIS 11048, at * 18. A theory of *respondeat superior* cannot form the basis of such liability. *Colon*, 58 F. 3d at 873. Supervisory liability can only be shown in the following ways:

> actual direct participation in the constitutional violation, (2) the failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned the conduct amounting to a constitutional violation or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Richardson v. Goord*, 347 F. 3d 431, 435 (2nd Cir. 2003).

Here, plaintiff did not allege that Horn, Shaw, Riordan, Langston, and Davis were personally involved in the incidents alleged in the Amended Complaint. *See generally* Amended Complaint. Plaintiff has also not alleged facts that any of these defendants were grossly negligent in supervising their subordinates or any facts that they personally failed to act on information that unconstitutional acts were occurring. Rather, plaintiff has made only conclusory allegations that these defendants' ' "policies, procedures, acts, and omissions with respect to overcrowding at EMTC" caused plaintiff to be deprived of adequate shelter, reasonable safety, and basic human needs and placed him at "unreasonable risk of increased violence, illness, mental suffering, and deteriorating health" *Id.*, ¶43. Plaintiff also makes conclusory allegations that "defendants knew of and disregarded conditions posing an excessive risk to Plaintiff's health and safety."( *Id.*, ¶ 44), and that their actions were intentional. *Id.*, ¶ 45. With regard to his First Amendment claims, plaintiff alleges that these defendants "have a policy of designating inmates

who do not select a religion upon intake Christian and prohibiting such inmates from attending the religious services of other religions (*Id.*, ¶ 62) and that their actions deprived plaintiff of his right to practice his religion and that these acts were intentional. *Id.*, ¶¶ 64-65. These allegations, however, are inadequate because they are merely conclusory. *See* Discussion at Point III.A.1.b. at p. 7. Defendants Horn, Shaw, Riordan, Langston, Davis, therefore, cannot be liable for damages under § 1983 and these claims should be dismissed. *See Renelique v. Doe, et al.*, 2002 U.S. Dist. LEXIS 26980, at *14-16. Plaintiff's claims against all of the individually named defendants should be dismissed.

### POINT V

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiff has raised numerous claims for which he lacks standing to bring. In order for a plaintiff to have standing to bring an action, the Supreme Court has held that:

> "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) (footnote, citations, and internal quotation marks omitted) . . . In light of these principles, we have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power.

*United States v. Hayes*, 515 U.S. 737, 742 (1995)(citations omitted), *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996).

-23-

Here, as discussed more fully above under Point III, plaintiff's Complaint contains a number conclusory allegations that do not satisfy these strict standing requirements as plaintiff has not alleged that he has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent". For example, plaintiff lacks standing to bring claims about: eating with trays on inmates' laps, access to the law library, among other complaints, because he has not alleged facts sufficient to indicate that he suffered any actual injury that is concrete and particularized, as a result of these alleged violations.

## CONCLUSION

**WHEREFORE**, defendants respectfully request that their motion to dismiss the Complaint be granted, that the Complaint be dismissed in its entirety, and that the request for relief be denied in all respects.

Dated:      New York, New York
            January 18 , 2008


                              **MICHAEL A. CARDOZO**
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant
                              100 Church Street, Room 2-185
                              New York, New York 10007
                              (212) 788-0408
                              By:

                              Deborah A. Dorfman
                              Assistant Corporation Counsel


TO:    Stroock, Stroock & Lavan, LLP, Attorneys for Plaintiff

APPENDIX I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARRELL BREWSTER
                        Plaintiff,

        vs.

CITY OF NEW YORK, MR. MARTIN F. HORN, in
his individual and official capacity as Commissioner
of the New York City Department of Corrections,
BRIAN RIORDAN, in his individual and official
capacity as Warden of the Anna M. Kross Center,
FRANK SQUILLANTE, in his individual and
official capacity as Warden of the George R. Vierno
Center, ROBERT SHAW, in his individual and
official capacity as Warden of the George R. Vierno
Center, SANDRA LANGSTON, in her individual
and official capacity as Warden of the Eric. M.
Taylor Center, and JOANDREA DAVIS, in her
individual and official capacity as Warden of the Eric
M. Taylor Center,
                        Defendants.

**AMENDED COMPLAINT**

Civil Action No. 07 Civ 4016 (JPP)

Plaintiff DARRELL BREWSTER, by his attorneys Stroock & Stroock & Lavan LLP,

alleges upon knowledge as to himself and upon information and belief as to all other matters as

follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Darrell Brewster files this action pursuant to 42 U.S.C. § 1983

seeking redress of injuries he suffered while in the custody of the New York City Department of

Correction for deprivation under color of state law of the rights, privileges and immunities

secured to him by the United States Constitution and in particular the First, Eighth and

Fourteenth Amendments thereof.

2.      Specifically, Mr. Brewster challenges and seeks redress for various

conditions and circumstances of confinement at Rikers Island which fall below the standards of

human decency, inflict needless suffering and caused him to be deprived of adequate shelter, reasonable safety and several of life's basic necessities. Mr. Brewster also challenges and seeks redress for a policy of the Defendants which interfered with his free exercise of religion and offends the Establishment Clause of the First Amendment.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as events giving rise to this action occurred within this district.

## PARTIES

5.      Mr. Brewster was confined in three separate facilities on Rikers Island between September 2006 and March 2007.  From September 7, 2006 until approximately September 20, 2006, Mr. Brewster was confined in section C-95 of the Anna M. Kross Center ("AMKC"), at 18-18 Hazen Street, East Elmhurst, New York 11370.  On or about September 21, 2006, Mr. Brewster was transferred to the Beacon section of the George R. Vierno Center ("GRVC") at 09-09 Hazen Street, East Elmhurst, New York 11370, where he remained confined until approximately January 29, 2007.  On or about January 30, 2007, Mr. Brewster was transferred to section C-76 of the Eric M. Taylor Center ("ETMC") at 10-10 Hazen Street, East Elmhurst, New York, 11370, where he completed the remainder of his sentence and was released from confinement on or about March 2007.

6.      Defendant City of New York is a municipal corporation, which through its Department of Correction (the "DOC"), operates a number of detention jails.  The DOC, through its senior officials at the central office, in each facility, promulgated and implements policies.  In addition, senior officials in the DOC are aware of and tolerate certain practices by subordinate

employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten DOC policies or customs. The Department is also responsible for the appointment, training, supervision and conduct of all DOC personnel, including the defendants referenced herein.

7.    Defendant Martin F. Horn is and was at all times relevant to this action, the Commissioner of the NYC-DOC. Upon information and belief, Defendant Horn, as Commissioner of the DOC, is responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel including the defendants referenced herein. Defendant Horn is and was at all relevant times responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York. He is sued in his official and individual capacities.

8.    Defendant Brian Riordan is and was at all times relevant to this action, the Warden of AMKC. In that capacity, Defendant Riordan is ultimately responsible for the care, custody, and safe treatment of those inmates in AMKC. He is sued in his official and individual capacities.

9.    Defendant Frank Squillante was for a portion of the time relevant to this action, the Warden of GRVC. In that capacity, Defendant Squillante was ultimately responsible for the care, custody, and safe treatment of those inmates in GRVC. He is sued in his official and individual capacities.

10.    Defendant Robert Shaw is and was for a portion of the time relevant to this action, the Warden of GRVC. In that capacity, Defendant Shaw is ultimately responsible for

the care, custody, and safe treatment of those inmates in GRVC. He is sued in his official and individual capacities.

11.    Defendant Sandra Langston was for a portion of the time relevant to this action, the Warden of EMTC. In that capacity, Defendant Langston was ultimately responsible for the care, custody, and safe treatment of those inmates in EMTC. She is sued in her official and individual capacities.

12.    Defendant Joandrea Davis is and was for a portion of the time relevant to this action, the Warden of EMTC. In that capacity, Defendant Davis is ultimately responsible for the care, custody, and safe treatment of those inmates in EMTC. He is sued in his official and individual capacities.

13.    At all relevant times herein, Defendants Horn, Riordan, Squillante, Shaw, Langston, and Davis, were each a "person" for purposes of 42 U.S.C. §1983, and acted under color of law to deprive Mr. Brewster of his Constitutional rights, as set forth more fully below.

## STATEMENT OF FACTS

### A.    The Conditions of Mr. Brewster's Confinement Violated the Eighth Amendment

14.    From the time that the first jail opened in the city, overcrowding has been a recurring problem.

15.    According to the DOC, it now averages a daily inmate count of between 16,500 to 20,000. This number is greater than the entire state prison population of most states.

16.    Most of these inmates are housed in facilities on Rikers Island.

17.    When Mr. Brewster was admitted to the custody of the City of New York on September 7, 2006, he was a pretrial detainee. After spending twelve hours in the bullpen awaiting a medical intake examination, Mr. Brewster was placed in a housing unit of AMKC

-4-

without receiving basic hygiene items such as toilet paper, soap, or toothpaste. Two days later, Mr. Brewster was informed by a female sergeant that the entire building – not just Mr. Brewster or his housing unit – had run out of supplies. Because the City of New York had inadequate resources to provide supplies to all of the inmates it was housing in AMKC, Mr. Brewster was deprived of these basic necessities for the better part of a week. Thereafter, Mr. Brewster suffered similar deprivations for briefer durations, on a regular basis since the facilities in which he was confined on Rikers Island often ran out of soap, detergent, toothpaste, toilet paper and blankets due to overcrowding.

18.    While confined in AMKC, Mr. Brewster was forced to sleep in a bed placed arms-length away from the sleeping space of the persons directly adjacent to him, in violation of §1-05 of the City of New York's own minimum standards for overcrowding in correctional facilities. Upon information and belief, the City's failure to provide the mandated amount of sleeping space to inmates in AMKC was the result of overcrowding.

19.    On September 12, 2006, Mr. Brewster submitted a grievance concerning the above conditions by dropping a copy in the grievance box provided for that purpose. Mr. Brewster never received any response to his September 12, 2006 grievance.

20.    When Mr. Brewster was transferred from AMKC to the GRVC, he was still awaiting trial. In GRVC, Mr. Brewster was housed in a cell approximately 11-12 hours a day. Although the 50 prisoners held in the cell areas of GRVC were permitted to spend time outside their cell in a common area provided for meals and recreation, the space was not large enough to accommodate everyone at the same time. During meal times, some inmates were forced to eat with their meal trays in their laps since there were not enough tables for all of the inmates.

21.     Lock-in periods, in which the inmates were forced to remain in their cells, would often last longer than they should due to delays in shift changes and the searches conducted during lock-in. The time that Mr. Brewster and the other residents of GRVC were confined to their cell was regularly extended while the single officer assigned to that housing unit assisted with searches in other areas of the facility.

22.     Moreover, while in GRVC, Mr. Brewster was often deprived the opportunity for exercise and recreation and law library because they were offered to his overcrowded housing unit at the same time as other activities such as commissary, meals, sick call, etc. These scheduling practices, which violate §§ 1-07 and 1-09 of the City of New York's own minimum standards for correctional facilities, are upon information and belief, the function of an over-taxed facility which does not have the space or the resources to accommodate all the inmates it is housing due to overcrowding. Even where Mr. Brewster was allowed to exercise his right to use GRVC's law library at the expense of yard or another activity, he was never able to use the law library for the two hours provided for by DOC policy. Mr. Brewster would spend a half hour to forty-five minutes in the law library which has a maximum nine-person capacity, before he was forced to relinquish his space to another waiting inmate. Mr. Brewster could sign a sheet to be called back to the library if space later became available, but in Mr. Brewster's experience, space never permitted such a call-back.

23.     Mr. Brewster submitted a grievance with respect to these scheduling practices on November 7, 2006 after a male captain told him that it was a violation of the DOC's own policies to call law library and yard at the same time. Mr. Brewster submitted the grievance by dropping it into the grievance box provided for that purpose. Mr. Brewster never received a response to his November 7, 2006 grievance.

24.    In GRVC, Mr. Brewster frequently had to go without basic hygiene items, such as, soap, detergent, toothpaste, razors, and toilet paper since there were always shortages in supplies in his housing unit.  When Mr. Brewster was deprived of adequate supplies, he complained to officers who informally addressed his complaints by scavenging for whatever supplies they could obtain from other housing units or facilities.  Nevertheless, there were periods in which Mr. Brewster was deprived of these basic necessities due to the overcrowded conditions in GRVC.

25.    Mr. Brewster was not sentenced until January 2007.

26.    When Mr. Brewster was transferred to EMTC on January 30, 2007, he was placed in C-76, in dormitory-style housing.  Similar to the conditions in AMKC, the beds in this housing unit were spaced arms-length apart, in violation of §1-05 of the City of New York's own minimum standards concerning overcrowding.  Upon information and belief, the City's failure to provide the mandated amount of sleeping space to inmates in EMTC was the result of overcrowding.

27.    Just as in GRVC, Mr. Brewster was frequently deprived of the opportunity for exercise, recreation, and law library in EMTC because they were only offered to his overcrowded housing unit at the same time as other activities such as commissary, meals, sick call, etc.

28.    And like in AMKC and GRVC, EMTC had insufficient health and hygiene supplies for all prisoners housed therein due to the overcrowding.  Supplies of soap and toilet paper, in particular, were especially scarce.  On numerous occasions, Mr. Brewster was deprived of these basic necessities.  During Mr. Brewster's confinement, laundry services were also insufficient to provide each inmate with a clean change of clothing at least twice per week in

accordance with § 1-04 of the City of New York's own minimum standards concerning personal hygiene. One box of powder detergent was supplied to the 60 man dorm roughly once every three weeks. This supply was insufficient to address the laundry needs of the dorm and would last only a few days. The inmates in EMTC were not provided with enough bar soap to clean their persons much less their clothing. Mr. Brewster was forced to wear the same dirty uniform from January 30, 2007 until mid-March, when he acquired a second uniform from an inmate who was being discharged.

29.     On February 11, 2007, Mr. Brewster submitted a grievance concerning the lack of clean uniforms in EMTC by dropping a copy in the grievance box provided for that purpose. Mr. Brewster never received any response to his February 11, 2007 grievance.

30.     Mr. Brewster did not submit any other grievances while in EMTC because he feared that doing so might negatively impact his March 2007 release date.

31.     The totality of the circumstances described above constitute a failure to provide Mr. Brewster with the basic necessities of life during his confinement. Overcrowding and its effects, including inadequate clothing, shelter and sanitation, have caused genuine deprivation and hardship over an extended period of time for Mr. Brewster. Such harsh conditions and restrictions are incompatible with contemporary standards of decency, cause wanton and unnecessary infliction of pain, and are not reasonably related to any legitimate penological objectives.

32.     As a result of the foregoing, Mr. Brewster was subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

### B. Defendants Violated Mr. Brewster's First Amendment Rights

33.     Upon intake, inmates are required to designate a religion, and thereafter can only attend services for that religion.   All of the facilities in which Mr. Brewster was confined on Rikers Island have a policy of prohibiting inmates from attending the religious services of any religion with which the inmate is not registered.  Mr. Brewster tried to attend Muslim services several times during his confinement and was denied because he had not designated a religion upon intake and received the classification of Christian on his prisoner ID card by default.  This policy not only infringes upon Mr. Brewster's right to freely practice religion, but also violates the First Amendment's prohibition against government respecting an establishment of religion by favoring Christian religions over others.

34.     This policy of restricting inmates from going to religious services and favoring Christian religions over others is not rationally related to any legitimate penological objective.

### C. The City of New York's Inmate Grievance Procedure Was Not Available To Mr. Brewster

35.     Special circumstances excuse Mr. Brewster's failure to grieve or fully exhaust his administrative remedies.

36.     Mr. Brewster was not provided with a copy of an inmate rule book or a copy of the City of New York's inmate grievance procedures upon his initial intake to Rikers Island or upon any of his transfers.   Upon intake, Mr. Brewster was coerced into providing a signed statement that he had reviewed the inmate rule book, even though he had not.  Inmates who after waiting 12 hours to be processed, requested to review the rule book were put back in the bullpen, instead of proceeding to their housing assignment.

37.     Mr. Brewster has never seen the City of New York's inmate grievance

procedure. He was not aware that the procedure involved a five-step process or that he could appeal his grievance to the next level if it was not decided within the allotted time frames. He believed his only available remedies were to make informal complaints to the officers and captains in his housing units and then to submit a grievance form and await a response.

38.    As alleged above, Mr. Brewster never received a response to any of the grievances he submitted concerning the conditions of his confinement.

39.    Upon information and belief, it is a policy and practice of the DOC to ignore most of the grievances it receives from the inmate population, so as to frustrate and impede the claims of unsophisticated parties such as Mr. Brewster.

40.    Upon information and belief, Defendants routinely deprive inmates of access to the grievance procedure, to stymie complaints regarding conditions of confinement and thereafter avail themselves of a non-exhaustion defense which further frustrates, if not stifles, inmates like Mr. Brewster from pursuing valid legal claims concerning the overcrowded conditions in AMKC, GRVC and EMTC.

41.    This policy and practice rendered the grievance procedure unavailable to Mr. Brewster.

## COUNT I

### Violation of the Eighth and Fourteenth Amendments and 42 U.S.C. §1983 Against Defendants Horn, Riordan, Squillante, Shaw, Langston, and Davis

42.    Mr. Brewster repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

43.    Defendants' policies, practices, acts, and omissions with respect to overcrowding at AMKC, GRVC, and EMTC deprived Plaintiff of adequate shelter, reasonable

safety, and basic human needs, and placed Mr. Brewster at unreasonable risk of increased violence, illness, mental suffering, and deteriorating health.

44.     Defendants knew of and disregarded conditions posing an excessive risk to Plaintiff's health and safety, but failed to take necessary or appropriate action to rectify those conditions. Defendants were deliberately indifferent to the serious hardship inflicted on Mr. Brewster by the unconstitutional conditions of his confinement, and to the concomitant infringement of his rights.

45.     By reason of the foregoing, and by subjecting Mr. Brewster to these overcrowding and its effects, Defendants deprived plaintiff of rights, remedies, privileges, and immunities secured by 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

46.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Defendants' acts, or failure to act, were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Brewster of his constitutional rights secured by 42 U.S.C. §1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

47.     As a direct and proximate result of the facts alleged, Mr. Brewster sustained the damages alleged above.

## COUNT II

### Violation of the Eighth and Fourteenth Amendments and 42 U.S.C. §1983 Against Defendant City of New York

48.     Mr. Brewster repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

49.     Defendant's policies, practices, acts, and omissions with respect to overcrowding at AMKC, GRVC, and EMTC deprived Plaintiff of adequate shelter, reasonable safety, and basic human needs, and placed Mr. Brewster at unreasonable risk of increased violence, illness, mental suffering, and deteriorating health.

50.     Defendant knew of and disregarded conditions posing an excessive risk to Plaintiff's health and safety, but failed to take necessary or appropriate action to rectify those conditions.

51.     Defendant, the City of New York, through the DOC, and acting under pretense and color of law, did permit, tolerate, and act with deliberate indifference to a pattern and practice of overcrowded conditions at Rikers Island.  This widespread tolerance of overcrowding and its effects constitutes a municipal policy, practice, or custom, and led to Mr. Brewster's injuries.

52.     By permitting, tolerating, and sanctioning a persistent and widespread policy, practice and custom pursuant to which Mr. Brewster was subject to overcrowded conditions, Defendant City of New York has deprived Mr. Brewster of rights, remedies, privileges, and immunities secured by 42 U.S.C. §1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

53.     As a direct and proximate result of the facts alleged, Mr. Brewster sustained the damages alleged above.

## COUNT III

### Violation of the First and Fourteenth Amendments and 42 U.S.C. §1983 Against Defendants Horn, Riordan, Squillante, Shaw, Langston, Davis and the City of New York

54.    Mr. Brewster repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

55.    During his confinement, Mr. Brewster sought to attend Muslim services.

56.    Mr. Brewster was prohibited from attending religious services by prison regulations providing that he only attend services for the religion with which he registered upon intake.  Because Mr. Brewster did not self-designate himself Muslim upon intake, he was designated Christian by default and denied the opportunity to attend Muslim services.

57.    Defendants' conduct has deprived Mr. Brewster of his right to free exercise of religion.

58.    By reason of the foregoing, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities secured by 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

59.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees.  Defendants' acts, or failures to act, were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers.  These Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Brewster of his constitutional rights secured by 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

60.    As a direct and proximate result of the facts alleged, Mr. Brewster sustained the damages alleged above.

-13-

## COUNT IV

### Violation of the First and Fourteenth Amendments and 42 U.S.C. §1983
### Against Defendants Horn, Riordan, Squillante, Shaw, Langston, Davis
### and the City of New York

61.    Mr. Brewster repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

62.    Defendants have a policy of designating inmates who do not select a religion upon intake Christian and prohibiting such inmates from attending the religious services of other religions.

63.    Defendants' conduct, as described above, constitutes an impermissible establishment of religion.

64.    By reason of the foregoing, Defendants deprived Plaintiff of rights, remedies, privileges, and immunities secured by 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the First and Fourteenth Amendments of the United States Constitution.

65.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Defendants' acts, or failures to act, were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These Defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Brewster of his constitutional rights secured by 42 U.S.C. §1983, and the First and Fourteenth Amendments to the United States Constitution.

66.    As a direct and proximate result of the facts alleged, Mr. Brewster sustained the damages alleged above.

### JURY DEMAND

67.    Mr. Brewster demands a trial by jury on all issues.

-14-

## PRAYER FOR RELIEF

WHEREFORE, Mr. Brewster respectfully prays for judgment against the Defendants as follows:

      (a)    Awarding compensatory damages for violations of 42 U.S.C. §§ 1983;

      (b)    Awarding reasonable attorneys' fees and costs of this action, pursuant to 42 U.S.C. §1988; and

      (c)    Awarding such other relief as this Court may deem just and proper.

Dated:  New York, New York
       November 15, 2007

STROOCK & STROOCK & LAVAN LLP

By: _____

James L. Bernard (JB-4273)
Kevin J. Curnin (KC-3561)
Ilana Cutler (IC-3378)
Michelle H. Schott (MS-1039)
180 Maiden Lane
New York, New York 10038-4982

*Attorneys for Plaintiff*

# APPENDIX II

The City of New York

Board of Correction

MINIMUM STANDARDS FOR
NEW YORK CITY CORRECTIONAL FACILITIES

CITY OF NEW YORK
MICHAEL R. BLOOMBERG, Mayor

maintained by each institution. An outdoor recreation area must allow for direct access to sunlight and air

**(c) Recreation Schedule**
Recreation periods shall be at least one hour, only time spent at the recreation area shall count toward the hour Recreation shall be available five days per week in the outdoor recreation area, except in inclement weather when the indoor recreation area shall be utilized By September 1, 1978, such recreation shall be available daily

**(d) Recreational Equipment**
The Department shall make available to prisoners an adequate amount of equipment during the recreation period. A list of the equipment available at each institution shall be submitted to the Board within 30 days of the effective date of this standard

**(e) Recreation Within Housing Area**
(1) Prisoners shall be permitted to engage in recreation activities within cell corridors and tiers, dayrooms and individual housing units. Such recreation may include but is not limited to:
    (i) table games,
    (ii) exercise programs; and
    (iii) arts and crafts activities
(2) Recreation taking place within cell corridors and tiers, dayrooms and individual housing units shall supplement, but not fulfill, the requirements of Section 1-07 (c)

**(f) Recreation for Prisoners in Segregation**
Prisoners confined in administrative or punitive segregation shall be permitted recreation in accordance with Section 1-07 (c)

## SECTION 1-08 RELIGION

**(a) Policy**
Prisoners have an unrestricted right to hold any religious belief, and to be a member of any religious group or organization, as well as to refrain from the exercise of any religious beliefs. A prisoner may change his or her religious affiliation

**(b) Exercise of Religious Beliefs**
(1) Prisoners are entitled to exercise their religious beliefs in any manner that does not constitute a clear and present danger to the safety or security of an institution
(2) No employee or agent of the Department or of any voluntary program shall be permitted to proselytize or seek to convert any

11

prisoner, nor shall any prisoner be compelled to exercise or be dissuaded from exercising any religious belief

(3) Equal status and protection shall be afforded all prisoners in the exercise of their religious beliefs except when such exercise is unduly disruptive of institutional routine

**(c) Congregate Religious Activities**

(1) Consistent with the requirements of Section 1-08(a), all prisoners shall be permitted to congregate for the purpose of religious worship and other religious activities

(2) Each institution shall provide all prisoners access to an appropriate area for congregate religious worship and other religious activities. Consistent with the requirements of Section 1-08(b)(1), this area shall be made available to prisoners in accordance with the practice of their religion

**(d) Religious Advisors**

(1) As used in this part, the term "religious advisor" shall mean a person who has received ecclesiastical endorsement from the relevant religious authority

(2) Religious advisors shall be permitted to conduct congregate religious activities permitted pursuant to Section 1-08(c) When no religious advisor is available, a member of a prisoner religious group may be permitted to conduct congregate religious activities

(3) Consistent with the requirements of Section 1-08(b)(1), prisoners shall be permitted confidential consultation with their religious advisors during lock-out periods

**(e) Celebration of Religious Holidays or Festivals**
Consistent with the requirements of Section 1-08(b)(1), prisoners shall be permitted to celebrate religious holidays or festivals on an individual congregate basis

**(f) Religious Dietary Laws**
Prisoners are entitled to the reasonable observance of dietary laws or fasts established by their religion. Each institution shall provide prisoners with food items sufficient to meet such religious dietary laws

**(g) Religious Articles**
Consistent with the requirements of Section 1-08(b) (1), prisoners shall be entitled to wear and to possess religious medals or other religious articles, including clothing and hats

12

**(h) Exercise of Religious Beliefs by Prisoners in Segregation**

(1) Prisoners confined in administrative or punitive segregation shall not be prohibited from exercising their religious beliefs, including the opportunities provided by Sections 1-08 (d), 1-08 (e), 1-08 (f), and 1-08 (g)

(2) Congregate religious activities by prisoners in administrative or punitive segregation shall be provided for by permitting such prisoners to attend congregate religious activities with appropriate security either by themselves or with other prisoners

**(i) Recognition of a Religious Group or Organization**

(1) A list shall be maintained of all religious groups and organizations recognized by the Department This list shall be in Spanish and English and shall be distributed to all incoming prisoners or posted in each housing area

(2) Each institution shall maintain a list of the religious advisor, if any, for each religious group and organization, and the time and place for the congregate service of each religion. This list shall be in Spanish and English and shall be distributed to all incoming prisoners or posted in each housing area

(3) Prisoner requests to exercise the beliefs of a religious group or organization not previously recognized shall be made to the Department

(4) In determining requests made pursuant to paragraph (3) of this subdivision, the following factors among others shall be considered as indicating a religious foundation for the belief:

    (i) whether there is substantial literature supporting the belief as related to religious principle;

    (ii) whether there is formal, organized worship by a recognizable and cohesive group sharing the belief;

    (iii) whether there is an informal association of persons who share common ethical, moral, or intellectual views supporting the belief; or

    (iv) whether the belief is deeply and sincerely held by the prisoner

(5) In determining requests made pursuant to paragraph (3) of this subdivision, the following factors shall not be considered as indicating a lack of religious foundation for the belief:

    (i) the belief is held by a small number of individuals;

    (ii) the belief is of recent origin;

    (iii) the belief is not based on the concept of a Supreme Being or its equivalent; or

    (iv) the belief is unpopular or controversial

13

(6) In determining requests made pursuant to paragraph (3) of this subdivision, prisoners shall be permitted to present evidence indicating a religious foundation for the belief

(7) The procedure outlined in Sections 1-08(j) (1) and 1-08 (j) (3) shall apply when a prisoner request made pursuant to Section 1-08 (i) (3) is denied

## Limitations on the Exercise of Religious Beliefs

(1) Any determination to limit the exercise of the religious beliefs of any prisoner shall be made in writing and shall state the specific facts and reasons underlying such determination A copy of this determination, including the appeal procedure, shall be sent to the Board and to any person affected by the determination within 24 hours of the determination

(2) This determination must be based on specific acts committed by the prisoner during the exercise of his or her religion that demonstrate a serious and immediate threat to the safety and security of the institution Prior to any determination, the prisoner must be provided with written notification of the specific charges and the names and statements of the charging parties, and be afforded an opportunity to respond

(3) Any person affected by a determination made pursuant to this subdivision may appeal such determination to the Board

   (i) The person affected by the determination shall give notice in writing to the Board and the Department of his or her intent to appeal the determination

   (ii) The Department and any person affected by the determination may submit to the Board for its consideration any relevant material in addition to the written determination

   (iii) The Board of its designate shall issue a written decision upon the appeal within 14 business days after it has received notice of the requested review

## SECTION 1-09 ACCESS TO COURTS

### (a) Policy

Prisoners are entitled to access to courts, attorneys, legal assistants and legal materials

### (b) Judicial and Administrative Proceedings

(1) Prisoners shall not be restricted in their communications with courts or administrative agencies pertaining to either criminal or civil proceedings

14

## DECLARATION OF SERVICE

**DEBORAH A. DORFMAN**, under penalty of perjury, declares pursuant to 28 U.S.C. §1746 that, on January 18, 2008, I caused a true and correct copy of the Defendants' Motion to Dismiss Plaintiff's Amended Complaint, attached thereto, to be served by Messenger and E-mail on Michelle H. Schott, Esq., attorney for plaintiff, at Stroock & Stroock, & Lavan, LLP, 180 Maiden Lane, New York, New York, 10038-4982, the address designated by him for that purpose.

Dated:     New York, New York
           January 18, 2008

By: _____
    Deborah A. Dorfman
    Assistant Corporation Counsel